**Sylvia WASSERMAN, Appellant,**

v.

**Irwin WASSERMAN, et al., Appellees.**

**No. 81–1591.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 4, 1982.

Decided Feb. 24, 1982.

---

11.  622 F.2d at 10.

Stuart M. Salsbury, Israelson & Jackson, P. A., Baltimore, Md., on brief, for appellant.

Nell B. Strachan, James K. Archibald, Sheldon H. Braiterman, Baltimore, Md., Armand Robinson, Washington, D. C., on brief for appellees.

Before WINTER, Chief Judge, BUTZNER, Circuit Judge, and INGRAHAM,* Senior Circuit Judge.

INGRAHAM, Senior Circuit Judge:

Sylvia Wasserman appeals from the dismissal of a diversity suit against her former husband and other defendants in which she had alleged the defendants removed, or as-

sisted in removing, her children from her custody without her consent during the Wassermans' divorce proceedings in 1977 and 1978. The district court dismissed the complaint for lack of subject-matter jurisdiction, describing the suit as a "dispute involving child custody," and thus within the domestic relations exception to federal diversity jurisdiction. We reverse and remand for further proceedings.

### I.  *Background*[1]

Appellant Sylvia Wasserman is the former wife of appellee Irwin Wasserman. The Wassermans are the parents of four minor children. In addition to appellee Irwin Wasserman the complaint also named Irwin's present wife, his parents and the attorneys who represented him in the divorce and related proceedings during the periods relevant to the complaint.

On June 8, 1976, the Circuit Court for Montgomery County, Maryland, granted custody of the minor Wasserman children to appellant for the duration of the proceedings then underway. The final decree of divorce was eventually granted on June 8, 1978. On December 14, 1977, appellee Irwin Wasserman removed the three youngest children from appellant's custody (with the alleged knowing assistance of the other appellees) and took them outside the State of Maryland. From December 14, 1977 until March 9, 1978, the appellees allegedly prevented the children from returning to or contacting appellant and concealed their location from her. Appellant charged that these facts gave rise to three causes of action: child enticement; intentional infliction of emotional distress; and civil conspiracy.

Appellees filed motions to dismiss and supplemental motions to dismiss urging, among other grounds, that the district court lacked subject-matter jurisdiction because

---

* Honorable Joe M. Ingraham, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

1. For purposes of reviewing the motion to dismiss, we accept as true the facts as alleged in

the complaint. *Coles v. Havens Realty Corp.*, 633 F.2d 384, 386 (4th Cir. 1980), *cert. granted,* 451 U.S. 905, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1981).

the suit involved domestic relations matters. After a hearing was held on these motions on May 11, 1981, the district court dismissed the suit by memorandum order dated May 12, 1981.

### II. *Discussion*

█ As the district court correctly observed, the federal courts have long held that diversity jurisdiction does not include the power to grant divorces, determine alimony or support obligations, or determine child custody rights. *See Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir. 1981); *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980); *Wilkins v. Rogers*, 581 F.2d 399, 403–04 (4th Cir. 1978). This doctrine, referred to as the domestic relations exception, is generally thought to originate in the dicta of two early Supreme Court cases, *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858), and *Ex Parte Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). While the supposed origin and nature of the doctrine has not escaped exacting criticism, *see, e.g.*, *Solomon v. Solomon*, 516 F.2d 1018, 1027 (3d Cir. 1975) (Gibbons, J., dissenting); *Spindel v. Spindel*, 283 F.Supp. 797 (E.D.N.Y.1968) (Weinstein, J.), it undoubtedly survives as a limitation, in some form, on the exercise of diversity jurisdiction. *Sutter v. Pitts, supra*, 639 F.2d at 843; *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 514 (2d Cir. 1973).

In this circuit application of the doctrine must be guided by the principles announced in *Cole v. Cole*, 633 F.2d 1083, 1087–89 (4th Cir. 1980). In *Cole*, a suit brought by the former husband against his ex-wife, the district court had dismissed claims of malicious prosecution and abuse of process, arson, conspiracy and conversion in the belief that the claims concerned matters of domestic relations. This court reversed, holding that:

A district court may not simply avoid all diversity cases having intrafamily aspects. Rather it must consider the exact nature of the rights asserted or of the breaches alleged.... So long as diversity jurisdiction endures, federal courts cannot shirk the inconvenience of sometimes trading in wares from the foul rag-and-bone shop of the heart.

633 F.2d at 1088–89. Examining the claims alleged by Mr. Cole, the court found the suit did not present any true domestic relations issues.

In so holding, the *Cole* court made the following observations: "The duty to abstain from malicious prosecution, from abuse of process, from arson, and from conversion does not arise out of or require . . . a present or prior family relation"; "deciding this case would not require the court either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached"; "the claims asserted could have arisen between strangers, and certainly between people with no marital relationship whatever"; and the asserted causes of action "do not require the existence of any rule particularly marital in nature as a substantial ingredient to give them vitality." *Id.*

█ Applying these considerations to the case at hand we believe *Cole* compels the district court to entertain this suit. Appellant's complaint alleges generally cognizable common law torts.[2] As in *Cole*, the previous marital relationship of the parties and the presumably strong feelings associated with that relationship may as a factual matter have contributed to the underlying events and initiation of this suit; however, the torts of child enticement and intentional infliction of emotional distress are in no

---

**2.** We note only that child enticement and intentional infliction of emotional distress are generally cognizable torts. *See generally Kajtazi v. Kajtazi*, 488 F.Supp. 15, 18–21 (E.D.N.Y.1978) (unlawful taking of child; intentional infliction of emotional distress); *Harris v. Jones*, 281 Md. 560, 380 A.2d 611 (1977) (intentional infliction of emotional distress); *McBride v. Magnuson*, 282 Or. 433, 578 P.2d 1259 (1978) (taking of child); W. Prosser, Handbook of the Law of Torts § 124 at 883–84 (4th Ed. 1971) (child enticement); RESTATEMENT (SECOND) OF TORTS, § 700 (1979) (unlawful taking of child). At this stage, of course, we offer no opinion as to the sufficiency or merit of these claims.

way dependent on a present or prior family relationship. Furthermore, prosecution of these torts will not require the existence of any rule particularly marital in nature. Similarly, these claims could have arisen between persons with no marital relationship whatsoever and in fact have done so in this case in view of the allegations relating to appellees other than Irwin Wasserman.

Most importantly, appellant is not seeking a determination of entitlement to custody or any other adjustment of family status. This is manifestly not a case in which the parties actually seek a declaration of present or future rights as to custody or visitation. *Cf. Doe v. Doe*, 660 F.2d 101 (4th Cir. 1981) (writ of habeas corpus not available to contest child custody); *Gargallo v. Gargallo*, 472 F.2d 1219 (6th Cir.), *cert. denied*, 414 U.S. 805, 94 S.Ct. 77, 38 L.Ed.2d 41 (1973); *Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir. 1967). The only genuine custody issue—whether appellant was entitled to custody for all times relevant to the complaint—was definitively determined by order of the Circuit Court of Montgomery County in June of 1976. Appellees concede the existence of that decree and suggest neither an intent to challenge it or any way the decree is susceptible of such challenge insofar as it stated the rights of the parties during the relevant time period. Accordingly, this case, unlike *Hernstadt*, does not involve a custody decree still subject to review and modification.

As the *Cole* court observed, federal courts have often exercised diversity jurisdiction to rule on the validity of prior state decrees or to determine the existence of a breach of duties established in such decrees, especially when the duties are no longer subject to modification. 633 F.2d at 1087; *cf. id.* at 1088 n.5. *See also Jagiella v. Jagiella*, 647 F.2d 561 (5th Cir. 1981); *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978); *Keating v. Keating*, 542 F.2d 910 (4th Cir. 1976). The court below will not have to make a significantly more intrusive inquiry into the domestic relations of these parties than required in those cases.

REVERSED and REMANDED.