GOETZ ᴇᴛ ᴀʟ. *v.* SMITH ᴇᴛ ᴜx.
SAUNDERS ᴇᴛ ᴜx *v.* PHILLIPS ᴇᴛ ᴀʟ.

[Nos. 46, 47, October Term, 1948.]

*Decided December 10, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Wilson K. Barnes* and *Emanuel Klawans* for appellants in No. 46 and for appellees in No. 47.

The Court declined to hear argument for the appellees in No. 46 and for appellants in No. 47. *Donald G. Murray* and *Charles H. Houston* on the brief for them.

MARBURY, C. J., delivered the opinion of the Court.

These two cases, Nos. 46 and 47, October Term 1948, argued together in this Court, involve the attempted enforcement of a restrictive covenant against the sale, lease, transfer or permitted occupation of the respective properties mentioned to or by "any negro, Chinaman, Japanese, or person of negro, Chinese or Japanese descent". The properties are parts of a tract called Beachwood Forest, platted and subdivided in 1922 by R. L. Jones, the owner at that time, and are located on the Magothy River in Anne Arundel County. Jones started to convey lots in this subdivision, the deeds containing restrictive covenant above set out, with the additional statement that such covenant should be inserted in all deeds for any land described in the plat. One of the first deeds, however, was to Edward D. Booz of 64.8 acres, which comprised the northern two-thirds of the entire tract. This deed describes the property by metes and bounds, but refers to the plat, and contains 93 out of the 160 lots in the subdivision. There is no restrictive cov-

enant in this deed. All of the other deeds made by Jones of lots in the subdivision, except that of one lot to G. Murray Seal, contain the restriction, and Seal subsequently conveyed this lot, with others acquired by him, by a deed containing the restriction. Jones conveyed his remaining lots on April 16, 1925 to a certain Requard, subject to the restriction and two of the plaintiff-appellees in No. 47, the Amers, purchased their lots from Requard, the restrictive covenant appearing in their deed. The other plaintiff-appellees in No. 47, the Phillips, acquired their lots, with the restriction through mesne conveyances from Requard. The Saunders and the Smiths, defendant-appellants in No. 47 are negroes and purchased their lots in 1946. The deed to the Smiths of one of their four lots omits the restriction, but the deed to the other three contains it. The Saunders deed is without the restriction. All of the lots with which No. 47 is concerned are in the tract which remained after the 64.8 acres were sold to Booz, and none of them comes out of that acreage.

In No. 46, the plaintiff-appellants own lots, subject to the restrictive covenant inserted in their deeds, which also are part of the tract reserved by Jones, but the Smiths, defendant-appellees in this case, purchased the 64.8 acres intact from the Trustees under the will of Edward Booz in August, 1943 and have since expended about $70,000 upon it, and use it as a picnic ground and park for negroes. These are the same Smiths who are defendant-appellants in No. 47 with respect to other lots. The case in No. 46 has to do only with their 64.8 acres, and their deed to this property does not contain the restrictive covenant.

The plaintiffs in No. 46 were unsuccessful in their effort to enforce the restrictive covenant against the Smiths' 64.8 acre tract, the chancellor holding that the restriction did not apply to this tract. The plaintiffs in No. 47 succeeded in getting a decree restraining the defendants from using and occupying their lots which came out of the tract reserved by Jones from the sale to Booz,

the chancellor holding that the restriction applied to these lots. The losers below, in each case, appealed.

It was contended below by the appellant-defendants in No. 47 that the enforcement of the restriction constituted a violation of the Fourteenth Amendment to the Constitution of the United States. The Chancellor found that the decisions of the Supreme Court and of this Court were to the contrary, citing *Corrigan v. Buckley,* 271 U. S. 323, 46 S. Ct. 521, 70 L. Ed. 969; *Meade v. Dennistone,* 173 Md. 295, 196 A. 330, 114 A. L. R. 1227, and *Scholtes v. McColgan,* 184 Md. 480, 41 A. 2d 479. His opinion was filed on February 27, 1948 and the decree appealed from on February 28, 1948. It was not until May 3, 1948 that the Supreme Court of the United States decided the cases of *Shelley v. Kraemer and McGhee v. Sipes,* 334 U. S. 1, 68 S. Ct. 836, 92 L. Ed. 1161. This decision, in our opinion, is controlling in the cases before us.

It is earnestly contended by the appellants in No. 46 and the appellees in No. 47 that the *Shelley-Kraemer* case, arising in St. Louis, and the *McGhee-Sipes* case, arising in Detroit, differ in many respects from the cases at bar. In the St. Louis case it is stated that the trial court found that the agreement did not become effective because not signed by all the property owners, that the restraint on alienation for 50 years might well be found to be unreasonable, that negroes had occupied some of the property for periods ranging from 23 to 63 years, that the negro purchasers had no actual knowledge of the restrictions at the time of making their purchase, and that there was no uniformity when the original agreement was signed, as a number of the properties were then occupied by negroes. In the Detroit case, it is noted that the restriction was not to be effective unless 80% of the property was subject to it, and that apparently 20% of the property was unrestricted. It is pointed out that the defendants before us knew of the restrictions and should be estopped from contesting them. These facts do, in some respects, differentiate these cases, but the Supreme Court did not base its decision on the ground

that the restrictions were invalid because of the particular facts shown. It held that [334 U. S. 1, 68 S. Ct. 845] "in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand." The decision rests upon the protection afforded by the Fourteenth Amendment to all persons within the jurisdiction of the States, and it determines that the equal protection clause of the Amendment inhibits judicial enforcement by state courts of restrictive covenants based on race or color. The defendants here, by their action in doing what the Supreme Court has said they have a right to do, cannot be estopped from making the defense the Court has said is valid.

The further argument is made to us that since the Supreme Court held that "the restrictive agreements, standing alone, cannot be regarded as a violation of any rights guaranteed * * * by the Fourteenth Amendment" no court should hold that such a restrictive agreement may not be enforced in the courts, when there has been a breach. This argument comes too late. That is precisely what the Supreme Court decided. The decisions of the Supreme Court of the United States, construing the United States Constitution and its Amendments are binding on this Court, and, once definitely made, as in this case, must be followed by us. We are not at liberty to decide to the contrary, or to attempt to whittle away the effect of such decisions by holding that some of the statements made are *dicta*. If the Supreme Court did not mean what it said, or said more than it should, or what it should not have said, the responsibility is its and not ours.

The decree in No. 46, *Goetz, et al. v. Smith* will be affirmed, and the decree in No. 47, *Saunders, et al. v. Phillips, et al.*, will be reversed and the bill of complaint dismissed.

> *Decree in No. 46 affirmed with costs. Decree in No. 47 reversed and bill dismissed with costs to appellants.*