**Lonnie E. ACORD, Plaintiff,**

v.

**Mary E. PARSONS, et al., Defendants.**

**Civ. A. No. 82–0273.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Nov. 22, 1982.

John C. Quigley, Jr., Radford, Va., for plaintiff.

Robert J. Ingram, Jr., Gilmer, Sadler, Ingram, Sutherland & Hutton, Blacksburg, Va., for defendants.

## MEMORANDUM OPINION

DALTON, District Judge.

Plaintiff Lonnie E. Acord filed suit against his former wife Mary E. Parsons, Mary's husband Issac C. Parsons,[1] and an attorney,[2] alleging various claims for relief arising out of the defendants' alleged abduction of Angela Acord, the daughter of Lonnie and Mary. The case now comes before this court on defendants' motion to dismiss for want of subject matter jurisdiction.[3]

The facts relevant to this procedural motion are largely undisputed. Lonnie and Mary were divorced in West Virginia on March 5, 1975; the Circuit Court of Beckley, West Virginia granted custody of two minor issue of the marriage to Lonnie.

Mary was wed to Issac Parsons in May, 1975, and they resided in West Virginia thereafter. On February 19, 1976, Mary petitioned the Beckley, West Virginia Cir-

1. Plaintiff alleges that the Parsons' marriage has ended in divorce; this fact, if true, has no bearing on the lawsuit.

2. This defendant was dismissed from the suit by Order of this Court dated August 10, 1982; the motion at issue here concerns only Mary and Issac.

3. Defendant conceded the additional grounds alleged in its motion at the time of the oral argument heard before this court on September 29, 1982.

cuit Court to reverse its earlier Order and grant custody to her. A hearing was held on this petition some time prior to July 16, 1976, and Mary was granted visitation rights. On June 26, 1976, Lonnie moved to Missouri with the children, without notifying Mary, Issac, or the West Virginia court. On July 7, 1976, Mary petitioned the court for specific visitation rights. Lonnie was never served with this petition. His attorney was, however, but he could not locate his client, and then he withdrew from the case. On July 16, 1976, the Beckley Court apparently held an *ex parte* hearing at the conclusion of which it granted custody to Mary.

Mary and Issac, armed with the new Order, searched for Lonnie and the children from August to December, 1976. At some time—it is not clear when—the Missouri courts gave full faith and credit to the July 16, 1976 West Virginia Order. But in the meantime Lonnie took the children to Virginia.

In late 1977, Mary located Lonnie in Virginia and retrieved Angela. (She voluntarily left the other child, a son, with Lonnie; this dispute concerns only Angela.) Mary, Issac, and Angela returned to West Virginia and Angela attended school there.

In December, 1977, Lonnie petitioned the Raleigh County, West Virginia Circuit Court to reverse the July 16, 1976 Order granting custody to Mary, but the earlier Order was upheld on December 5, 1978. The December 5 decision, however, was reversed by West Virginia's Supreme Court on April 1, 1980. *Acord v. Acord,* 264 S.E.2d 848 (W.Va.1980). Angela went back to Virginia with her father, after the Raleigh County Circuit ordered her return on June 24, 1980.

During Christmas of 1980, Angela stayed with Mary and Issac and remained beyond the period allotted for visitation. On January 9, 1981, Lonnie removed Angela from West Virginia and refused further visitation.

On August 5, 1981, events took place which form the nucleus of this lawsuit. The parties' versions of what happened differ dramatically, and there is no need, at this stage, to review the varying contentions. It is sufficient to note that Angela disappeared from Virginia soil and resurfaced in West Virginia, in her mother's custody.

Lonnie arranged for Mary's arrest with the Montgomery County, Virginia Sheriff's Department. On August 24, 1981, Mary surrendered to West Virginia authorities, acting on her attorney's advice. (She was freed on bond.)

Mary, meanwhile, filed another petition for custody and was heard on September 22, 1981, in the Circuit Court of Raleigh, West Virginia. That court entered an Order on September 23, 1981, granting, *inter alia,* temporary custody to Mary pending further hearing on the petition. *See* Exhibit B to Defendant's Memorandum. The court also set a subsequent hearing date for October 30, 1981. The court is not aware whether such a hearing was held; in any event, the Order is apparently still in effect.[4]

On April 29, 1982, Lonnie sued in this court in three counts, alleging child enticement, intentional infliction of emotional distress, and civil conspiracy.[5] Lonnie, by this action, seeks only monetary damages.

Defendants now move to dismiss on the ground that, though the parties are of diverse citizenship, this case is within the domestic relations exception to the grant of jurisdiction found in 28 U.S.C. § 1332.

Defendants' contention must be considered in the light of three recent decisions of the Fourth Circuit. *Wasserman v. Wasserman,* 671 F.2d 832 (4th Cir.), *cert. denied* —— U.S. ——, 103 S.Ct. 372, 74 L.Ed.2d

---

4. Counsel for plaintiff indicated during oral argument that he was experiencing difficulty in obtaining an adjudication from the West Virginia Courts. This aspect is discussed further below.

5. Lonnie also filed an action in the Circuit Court of Montgomery County, Virginia, which suit was dismissed on July 15, 1982, apparently for lack of personal jurisdiction. *See* Exhibit A to Defendant's Memorandum.

507 (1982), is most closely related to this action. There, Mr. and Mrs. Wasserman were in the midst of a divorce. The divorce court granted Mrs. Wasserman custody of three children for the duration of the divorce proceeding. Mr. Wasserman abducted the children and concealed them from Mrs. Wasserman. The court held that Mrs. Wasserman's suit for child enticement, intentional infliction of emotional distress, and civil conspiracy was not precluded by the domestic relations exception to diversity jurisdiction.

The court found that the domestic relations exception, though criticized and limited, "undoubtedly survives as a limitation, in some form, on the exercise of diversity jurisdiction." 671 F.2d at 834. The court then identified *Cole v. Cole,* 633 F.2d 1083, 1087–89 (4th Cir.1980) as containing the guiding principles to be followed in such cases.

*Cole* involved a suit by a man against his ex-wife for malicious prosecution, abuse of process, arson, conversion, and conspiracy. The court held that the claims were not precluded by the domestic relations exception. The duty to refrain from the acts alleged, the court said, did not arise out of or require "a present or prior family relation." *Id.* at 1088. Deciding the case would not have required the district court to "adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached...." *Id.* at 1089. The claims could have arisen among strangers. *Id.* Further, "[t]he structure of the asserted actions is such that they do not require the existence of any rule particularly marital in nature as a substantial ingredient to give them vitality." *Id.* Finally, "[s]o long as diversity jurisdiction endures, federal courts cannot shirk the inconveniences of sometimes trading in wares from the foul rag-and-bone shop of the heart." *Id.*

Applying *Cole,* the *Wasserman* panel held that jurisdiction over the action existed. The torts alleged were not dependent on a prior or present family relation and could have arisen between strangers (and, in fact, Mr. Wasserman's new wife, named as a co-defendant, was such a stranger). 671 F.2d at 834–35. Mrs. Wasserman did not seek "a determination of entitlement to custody or any other adjustment of family status." *Id.* It found, and this is most important to the suit at bar, that

> [t]he only genuine custody issue—whether appellant was entitled to custody *for all times relevant to the complaint*—was definitively determined by order of the Circuit Court of Montgomery County in June of 1976. Appellees concede the existence of that decree and suggest neither an intent to challenge it or any way the decree is susceptible to such challenge insofar as it stated the rights of the parties *during the relevant time period.*

*Id.* (emphasis added).

A third case highly relevant to this proceeding is the recent one of *Kelser v. Anne Arundel County Department of Social Services,* 679 F.2d 1092 (4th Cir.1982).[6] In *Kelser,* the plaintiff mother sued an agency and several officials in federal district court pursuant to 42 U.S.C. § 1983 alleging that the defendants conspired to deprive her of the exclusive right to custody of her children. The district court dismissed the action under the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) because, at the time, two state court proceedings relating to custody were pending. The Court of Appeals approved of the abstention, citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), on the ground that, had the court proceeded, undue interference with the state court actions would have resulted. 679 F.2d at 1094.

**6.** Another case deserving mention is *Doe v. Doe,* 660 F.2d 101 (4th Cir.1981), which held that *habeas corpus* relief under 28 U.S.C. § 2254 is unavailable in federal court where the object of the petition was to obtain the custody of a child, especially when such relief would interfere with an ongoing state proceeding.

The district court had erred, however, in dismissing the action rather than staying proceedings and retaining the case on the docket. *Id.* Dismissal of such actions is proper, the court held, only where "'the exercise of jurisdiction would impermissibly affect a complex state administrative scheme or implicate federalism concerns ... or [where] the determinative issues will unfailingly be resolved within the parameters of the state-court litigation." *Id., quoting from Cox v. Planning District I Community Mental Health & Mental Retardation Services Board,* 669 F.2d 940, 942–43 (4th Cir.1982). Those factors were not present in *Kelser.* Notwithstanding the "intrafamilial background" of the action, adjustment of family status was not required. 679 F.2d at 1094–95. Rather, plaintiff's claim was "solely for damages for past actions whose validity [had] not been adjudicated in the state courts." *Id.* at 1095, *citing Cole* and *Wasserman.*

Applying the foregoing principles to this case,[7] the court concludes that the approach taken in *Kelser* is appropriate here. This case is almost identical to *Wasserman.* The only difference is that here, Mary Parsons has petitioned the West Virginia courts for custody and those proceedings are currently pending; presumably, the battle for the custody of Angela is not yet done with. It is not clear from the record exactly when Mary filed her petition to modify the custody Order; it was apparently filed between the time of the alleged abduction on August 5, 1981, and Judge Canterbury's Order entered on September 23, 1981.

Technically, this case could proceed under *Wasserman.* Although the matter is once more in issue, Lonnie was clearly entitled to the custody of Angela between August 5, when she disappeared, and September 23, when the Order granting temporary custody to Mary was entered. However, the decision of the Virginia Supreme Court granting custody to Lonnie rested on narrow procedural grounds. From the record as a whole, it does not appear that the custody issue, on the merits, is a dead one. Further, Lonnie was not entirely blameless

---

7. The two cases relied upon by defendant are inapposite. In *Sutter v. Pitts,* 639 F.2d 842 (1st Cir.1981), the plaintiff mother sued, under the guise of a civil rights action, for injunctive relief that would have returned the child to her (in addition to money damages). The court concluded that "her claim boil[ed] down to a demand for custody of the child." 639 F.2d at 844. In *Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir.1969), the father sued in federal district court in New York seeking declaratory relief and the construction of a Connecticut divorce decree. He argued that jurisdiction was somehow conferred by the full faith and credit clause. The court held that contention to the frivolous in light of previous decisions. In addition, the court held that the relief sought was not capable of monetary quantification, and the suit therefore failed to meet the $10,000 requirement of the diversity statute.

This case clearly involves a demand for monetary damages, and the torts alleged are ones that are generally recognized. *Wasserman v. Wasserman,* 671 F.2d at 834 n. 2. Any charge that the instant lawsuit is really a subterfuge designed to influence the custody battle is alleviated by the decision to retain jurisdiction until those proceedings are finally concluded.

In addition to *Sutter* and *Hernstadt,* defendant has cited, without comment, four cases relied upon by *Sutter.* The court has examined these cases and has found that they add nothing to this case that cannot be gleaned from *Sutter, Hernstadt,* and the several Fourth Circuit decision relied on by this court.

In *Crouch v. Crouch,* 566 F.2d 486 (5th Cir. 1978), the Fifth Circuit asserted jurisdiction over a wife's suit against her husband for the breach of a voluntary separation agreement. In *Bossom v. Bossom,* 551 F.2d 474 (2d Cir. 1980), the plaintiff's suit, seeking modification of a state divorce decree through the nullification of a stipulation incorporated therein was held to fall within the domestic relations exception. In *Armstrong v. Armstrong,* 508 F.2d 348 (1st Cir.1974), the court held that sound federal policy and comity required abstention where the husband sued the wife to enjoin foreclosure on mortgages securing a note executed by the husband, in favor of the wife, in settlement of a divorce action, where the note was incorporated, through a memorandum of understanding, in to the divorce decrees granted to both parties. Finally, *Philips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509 (2d Cir.1973), was a case where the Second Circuit held that a law firm's suit against a husband for services rendered to the wife was within the New York Court's exclusive jurisdiction for reasons related to, but not directly controlled by, the domestic relations exception. (It may be noted that the Second Circuit nevertheless addressed the merits in that case, for reasons not relevant here.)

in this unfortunate affair; he fled West Virginia in favor of Missouri, and Missouri in favor of Virginia, in the face of a West Virginia Order granting Mary visitation rights, and a Missouri Order giving full faith and credit to the July 16, 1976, West Virginia custody Order. All of Lonnie's moves were apparently accomplished without notice to, and in an attempt to deceive, Mary.

All the various considerations involved in this case, as well as precedent in this Circuit, will be vindicated by suspending proceedings in this court, while retaining jurisdiction over the matter. The West Virginia custody proceeding can proceed without fear of interference from this court. When those proceedings are finally resolved, Lonnie can resume prosecution of this suit, since the statute of limitations has been tolled by the filing of the complaint on April 29, 1982. Finally, when and if this court eventually hears the merits of Lonnie's action, it will have the benefit of a final adjudication of the custody of Angela; whether or not that is relevant can be determined at that time.

Plaintiff should not be troubled by this opinion. If he is, it will be only because his recovery of Angela will be postponed. If that is his complaint, however, then it would mean that the true purpose of this lawsuit is to accelerate the disposition of the custody determination by bringing pressure to bear upon Mary and Issac; but that is exactly what the domestic relations exception to diversity jurisdiction prevents this court from sanctioning. If, on the other hand, Lonnie is truly interested only in damages resulting from the alleged events of August 5, 1981, then he will not be prejudiced by postponement of this suit.

Plaintiff's counsel indicated, during the oral argument of this motion, that he was having trouble obtaining a final adjudication in the West Virginia courts, and intimated that the trouble stemmed from dilatory tactics on the part of Mary and Issac. Accordingly, to protect plaintiff's interests, the court is willing to entertain a motion to resume these proceedings if the custody of Angela is not finally determined by the West Virginia courts within a reasonable time.

Accordingly, an Order will enter staying proceedings in this matter until the issue of Angela's custody has been finally determined by the West Virginia courts, or the expiration of a reasonable time, whichever comes sooner.