David M. WILLIAMS, etc.

v.

John C. NORTH, II, etc.

Civ. No. K-85-3088.

United States District Court,
D. Maryland.

Feb. 26, 1986.

original report appears to have been lost through no fault of plaintiff.

David M. Williams, Chestertown, Md., plaintiff, pro se.

Stephen H. Sachs, Atty. Gen. of Md. and James G. Klair, Asst. Atty. Gen., Baltimore, Md., for defendants North, Wise, Cole, Carter, Raisin, Bodine and Foster.

David R. Thompson, Easton, Md., for defendant Talbot County.

George C. Nier, Denton, Md., for defendant Caroline County.

Robert V. Jones, Elkton, Md., for defendant Cecil County.

Patrick E. Thompson, Centreville, Md., for defendant Queen Anne's County.

Alvin I. Frederick and Lloyd J. Snow, Baltimore, Md., for defendant Hairston.

Gail Handly, defendant, pro se.

Michael T. Soberick, Gloucester, Va., for defendant Baker.

Joan B. Turner, defendant, pro se.

**FRANK A. KAUFMAN, Chief Judge.**

Plaintiff David M. Williams has moved for a temporary restraining order or a preliminary injunction, seeking to enjoin certain of defendants in this case [1] from proceeding in connection with a Petition for Contempt of Court which has been filed against plaintiff in the state child custody litigation underlying the within action. Defendants contend that under *Younger* [2] this court should at this time abstain from ruling on plaintiff's motion.

The within case was instituted on July 22, 1985. Plaintiff's complaint seeks injunctive and monetary relief against numerous defendants for various alleged vio-

---

1. The defendants sought to be enjoined include the following judicial officers of the State of Maryland: John C. North, before whom the state child custody case is pending; Clayton C. Carter; James Owen Wise; Donaldson C. Cole, Jr.; and George B. Rasin. Plaintiff Williams also seeks injunctive relief against Joan B. Turner, the petitioner in the state case, and her attorney, Waller S. Hairston.

2. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For discussions of *Younger, see generally* C. Cook & J. Sobieski, *Civil Rights Actions* ¶¶ 3.11–.16 (1985); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* §§ 4251–55 (1978 & 1985 Supp.).

lations of plaintiff's constitutional rights and for state torts arising out of a pending state court child custody case and various related events. Defendants include the judge presiding over the state custody case, other state judicial and executive officers, and certain private persons, some of whom are participants in the state proceedings. On December 18, 1985, this court issued a Memorandum and Order staying further proceedings in this case and a related case, *Williams v. Anderson*, Civil No. K–85–1646.[3]

On December 9, 1985, a Petition for Contempt of Court was filed by Joan B. Turner in the state child custody case, that is, *Turner v. Williams*, No. 6201, in the Circuit Court for Talbot County, Maryland. Ms. Turner, the petitioner in that state case, is a named defendant herein. Ms. Turner's said petition seeks to have David M. Williams, plaintiff herein and respondent in the state case, held in contempt of court[4] for various alleged violations of court orders and other allegedly contumacious actions, including, *inter alia*, plaintiff's bringing the within federal action and a related federal action in Civil No. K–85–1646 against other defendants. On December 19, 1985, plaintiff Williams filed a motion in the state court to dismiss the said contempt petition by his former wife. An answer to that motion has been filed by Ms. Turner. A hearing before the state court is set for February 28, 1986.

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), Justice Black held that considerations of equity and comity, *see id.* at 43 *et seq.*, 91 S.Ct. at 750 *et seq.*, required that "a federal court should not enjoin a state criminal prosecution begun prior to institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Samuels v. Mackell*, 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27

L.Ed.2d 688 (1971) (Black, J.) (stating the holding of *Younger* on the same day on which *Younger* was decided). Subsequently, the *Younger* principle has been held applicable in certain civil cases. *See e.g. Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In *Juidice v. Vail*, Justice Rehnquist wrote that "[t]hese principles [those enunciated earlier in *Younger* and in *Huffman* ] apply to a case in which the State's contempt process is involved." *Id.* 430 U.S. at 335, 97 S.Ct. at 1217. In that case, Vail, after being held in civil contempt by a New York state court, instituted, along with certain coplaintiffs, a class action in federal district court seeking to have New York's contempt statutory procedures declared unconstitutional. *See id.* at 328–30, 97 S.Ct. at 1213–14. A three-judge district court declared those procedures unconstitutional and enjoined their enforcement. *Id.* at 331, 97 S.Ct. at 1215. Reversing on *Younger* grounds in a 5–3 decision, without "reach[ing] the merits of the constitutional dispute," *id.* at 331, 97 S.Ct. at 1215 (footnote omitted), Justice Rehnquist wrote: "We must decide whether, with the existence of an available forum for raising constitutional issues in a state judicial proceeding, the United States District Court could properly entertain appellees' § 1983 action in light of our decisions in *Younger v. Harris* ... and *Huffman v. Pursue, Ltd.* .... We hold that it could not." *Id.* at 330, 97 S.Ct. at 1214. That holding seemingly applies to civil and criminal contempts. *See id.* at 335–36, 97 S.Ct. at 1217.

The applicability of *Juidice* to this case turns on the resolution of several ques-

---

3. A copy of that Memorandum and Order is attached hereto as an appendix.

4. The petition of Ms. Turner does not specify whether the alleged contempt is civil or criminal. 5 Md.L.Ency. 117 (1982) states: "Civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party, while a criminal contempt embraces all acts committed against the dignity of the court." Seemingly, civil contempt is involved in this instance.

tions, the first of which is whether plaintiff has an opportunity to press his federal claims in the state proceeding. *See id.* at 337, 97 S.Ct. at 1218: "Here it is abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention." (Emphasis in original, footnote omitted.) In the within case, plaintiff has not asserted, nor is this Court aware of, any reason why the state court is not fully empowered to consider the federal constitutional claims raised by plaintiff in his motion to dismiss the contempt petition filed in the state court and again in his complaint in the within federal action. Nor does this court know of any reason why the state court will not discharge its duty to reach and determine those claims.[5]

The second question regarding the applicability of *Juidice* to this case is whether contempt proceedings are pending as defendants seemingly assert, or merely threatened as plaintiff asserts.[6] If plaintiff is correct in that regard, since he is threatened with a possible contempt citation, plaintiff may have standing herein, *see Juidice v. Vail, supra* at 331–333, 97 S.Ct. at 1215–16, and also may avoid the bar of *Younger.* If defendants are correct, plaintiff has standing herein but cannot avoid the bar of *Younger* in his quest for federal relief.

In *WXYZ, Inc. v. Hand,* 658 F.2d 420 (6th Cir.1981), defendant, Judge Hand, a trial judge of the State of Michigan, was presiding in a state criminal case. Pursuant to a Michigan statute, the criminal defendant's attorney sought an order suppressing "the names of the victim and actor and the details of the alleged offense ... until such time as the actor is arraigned on the information, the charge is dis-

missed, or the case is otherwise concluded, whichever occurs first." *Id.* at 421. Judge Hand issued such an order, and informed members of the media "that violators would be subject to the contempt power of the court. Nevertheless, ... WXYZ–TV reported ... the incident, including the name of the [defendant]." *Id.* at 422. WXYZ–TV then instituted a federal action against Judge Hand seeking an injunction restraining Judge Hand from enforcing the suppression order and seeking to have the Michigan statute declared unconstitutional. *See id.* at 422, *citing, inter alia,* to *Juidice v. Vail, supra.* "Judge Hand contend[ed] that because his suppression order is a vital prerequisite to a future criminal contempt proceeding, the order itself should be regarded as a pending criminal proceeding." *Id.* at 423. The Sixth Circuit, in rejecting that view, wrote: "In the present case, neither a contempt order nor an order to show cause why appellees should not be held in contempt has issued. Michigan contempt proceedings are not pending, they are merely threatened. This genuine threat of prosecution is a prerequisite to appellees' standing to maintain this action. It does not, however, require us to consider Judge Hand's *Younger* contentions." *Id.* at 423–24 (citations omitted).

The question arises in this case as to whether the filing of the petition for contempt by the plaintiff in the state court case in which Williams is the defendant, constitutes a pending state court contempt proceeding or merely a threat of the same. This court has not been cited to, nor is it aware of, any case squarely controlling the resolution of that issue. However, application of general principles of contempt and abstention law, as well as policies which underlie them, would appear to indicate that the answer is that state contempt pro-

---

5. In *Baltimore Radio Show, Inc. v. State,* 193 Md. 300, 325, 67 A.2d 497 (1948), *cert. denied,* 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), Judge Henderson wrote:

It is trite to observe that we are bound by the decisions of the Supreme Court construing the Fourteenth Amendment. 'We are not at liberty to decide to the contrary, or to

attempt to whittle away the effect of such decisions by holding that some of the statements made are *dicta.*' *Goetz v. Smith,* 191 Md. 707, 711, 62 A.2d 602, 603.

6. *See generally* J. Cook & J. Sobieski, *supra* n. 2, ¶ 3.14; C. Wright, A. Miller & E. Cooper, *supra* n. 2, § 4253.

ceedings are in fact *pending* for purposes of applying *Juidice* to this case.

In WXYZ, *supra,* there was a court order and a violation of that order. By his own action, plaintiff therein threatened himself with possible contempt proceedings; however, no such proceedings had been instituted by the court itself or anyone else before the federal court suit was commenced, or indeed (apparently) while that case was pending at either the federal district or circuit levels. In the within instance, however, state court contempt proceedings have been instituted under the terms of Maryland Rule P4(a).

Under Maryland law, there are two forms of contempt: direct contempt, which is "a contempt committed in the presence of the court, or so near the court as to interrupt its proceedings," Maryland Rule P1(a); and constructive contempt, which is "a contempt which was not committed in the presence of the court, or so near the court as to interrupt its proceedings," Maryland Rule P1(b). *See generally Contempt* §§ 3–4, 5A Md.L.Ency. 115–17 (1982). Herein, a constructive rather than a direct contempt is involved.

Maryland Rule P4(a) provides: "Constructive contempt proceedings *may be instituted* by the court on its own motion, by the State's attorney *or by any person* having actual knowledge of the alleged contempt." (Emphasis added.) The Maryland rules then provide that "[i]f the court determines to cite the defendant for contempt, it shall issue an order requiring the defendant to show cause why an order adjudging him in contempt shall not be passed within the time stated therein." Maryland Rule P4(b)(1)(a). The Rule also provides for service of the order and for a hearing. *See* Maryland Rule P4(b)-(d). Seemingly, under that Rule, the contempt proceedings in the Maryland court began when the plaintiff therein filed a pleading seeking to have Williams held in contempt.

That conclusion is fully consistent with the policies enunciated in *Juidice* by Justice Rehnquist:

A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger,* supra, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman,* supra. But we think it is of sufficiently great import as to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system, cf. *Ketchum v. Edwards,* 153 NY 534, 539, 47 NE 918, 929 (1897). Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding," *Huffman,* supra, [420 U.S.] at 604 [95 S.Ct. at 1208]. Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the Stat[e]," *Younger,* supra, [401 U.S.] at 44, [91 S.Ct. at 750] but also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.'" *Huffman,* supra, [420 U.S.] at 604, [95 S.Ct. at 1208].

*Juidice, supra* 430 U.S. at 335–36, 97 S.Ct. at 1217 (footnotes omitted).

■ The interests which called for abstention in *Juidice* would appear to be strongly present in this case. State court contempt proceedings have been instituted, Williams has responded therein by filing a motion to dismiss the state court contempt petition, raising the same federal statutory and constitutional claims stated herein, and a forthcoming hearing has been scheduled by the state court. For this court to enjoin proceedings in that case would interfere

with the contempt litigation before the state court and might also negatively reflect upon that court's ability to deal with Williams' constitutional claims stated therein and herein. *Juidice* condemns just such interference and requires abstention by this court.

Unless either of the two exceptions, *i.e.*, (1) harassment or (2) bad faith, to the *Younger* doctrine dictate to the contrary, this court must, therefore, abstain in this case. *See Juidice* in which Justice Rehnquist wrote:

> We noted in Huffman that Younger principles do not apply, even where otherwise applicable,

>> "in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Huffman*, 420 U.S. at 611, [95 S.Ct. at 1212].

*Juidice* 430 U.S. at 338, 97 S.Ct. at 1218.

The second exception, *i.e.*, where a state statute's constitutionality is challenged is not applicable in this case. Williams does however allege that the contempt action was brought against him by the plaintiff in the state court case in bad faith and in order to harass him for having brought this and related federal actions.[7]

■ There is only minimal evidence herein that even suggests the possibility of bad faith or harassment. This is not a case of multiple prosecutions or where there is facially no hope of success in connection with the state contempt petition. Indeed, the only evidence herein which remotely suggests the possibility of harassment is the fact that the contempt petition points to the filing by Williams of federal actions as among Williams' allegedly contumacious

acts. One "variation under the bad faith exception involves situations where a state prosecution is directly designed to retaliate against or deter one from exercising a constitutional right." *Davila v. Texas*, 489 F.Supp. 803, 808 (S.D.Tex.1980). However, while plaintiff did have a right to bring his federal actions, the allegation relating to those actions is only one of a number of allegations in the contempt petition, many of which are unrelated to the federal actions. Nor is there any reason for this court to believe that the state court is not competent to adjudicate and protect plaintiff's right to bring his federal actions. *See Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), in which Chief Justice Burger wrote: "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.* at 431, 102 S.Ct. at 2521 (emphasis in original). *See also Moore v. Sims*, 442 U.S. 415, 429–30, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979) (Rehnquist, J.).

It is true that plaintiff has seemingly alleged bias, misconduct and prejudice against him on the part of the judicial defendants. However, in any event, if a fair hearing in the state court may be had, *Younger* would seemingly still apply. *See* C. Wright, A. Miller & E. Cooper, *supra* at § 4255 at 581–82. In that connection, it is to be noted that Maryland Rule P4(d)(2) provides that: "Unless a defendant otherwise consents, the judge who issued a citation for constructive contempt shall be disqualified from presiding at the hearing except where such contempt consists of failure to obey an order or judgment in a civil case." Whether or not Williams would be entitled to have a different Maryland judge sit in his case, if he is in fact cited for contempt in the Maryland trial court, Maryland's Canons of Judicial Ethics require its judges to "support both the federal and state constitutions" and "to be free from impropriety or the appearance of improprie-

---

7. As to the exceptions to the *Younger* doctrine, *see generally* C. Cook & J. Sobieski, *supra* n. 2,

¶ 3.15; C. Wright, A. Miller & E. Cooper, *supra* n. 2, § 4255.

ty ...." Maryland Rule 1231 (III–IV). Accordingly, conclusory allegations of harassment, such as those directed by Williams against the state court judge herein, do not indicate in any way that Maryland's entire court system has been rendered incompetent fairly to decide the federal constitutional claims raised therein and in this case by Williams. *See Peterson v. Sheran,* 635 F.2d 1335, 1340 (8th Cir.1980). At best, the record herein suggests that the state court's patience has been tried.[8]

Accordingly, this court concludes that *Younger* and *Juidice* require abstention by this court. Therefore, plaintiff's motion will accordingly be denied and the stay imposed by this court's aforementioned December 18, 1985 Memorandum and Order will remain in full force and effect.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF MARYLAND

CIVIL NO. K–85–1646

DAVID M. WILLIAMS, ETC.

V.

LLOYD A. ANDERSON, ETC., ET AL.

CIVIL NO. K–85–3088

DAVID M. WILLIAMS

V.

JOHN C. NORTH, II, ETC.

### MEMORANDUM AND ORDER

(1) Reference is hereby made to the pending motions to abstain or stay filed by the defendants in these factually related cases. Reference is hereby also made to the reports of counsel and plaintiff regarding the status of the state court child custody proceedings in *Turner v. Williams,* Equity No. 6201, and the state civil action in *Williams v. Anderson,* Case No. CV0129, both in the Circuit Court for Talbot County, Maryland.

(2) Where federal relief "pose[s] an obvious danger of undue interference with ongoing state court litigation," the federal court may exercise its discretion to stay the proceedings before it pending conclusion of the state action. *Kelser v. Anne Arundel County Department of Social Services,* 679 F.2d 1092, 1094 (4th Cir.1982); *see also Acord v. Parsons,* 551 F.Supp. 115, 117–19 (W.D.Va.1982); *Hinish v. Maryland,* 393 F.Supp. 53, 56–57 (D.Md.1975). Plaintiff herein seeks injunctive and declaratory relief and compensatory and punitive damages, including, *inter alia,* placement of his daughter in his custody, as relief for alleged constitutional violations and state torts arising out of the said state custody proceedings and related events. The defendants include the Judge before whom the state proceedings are pending, other judicial and executive officers, and private persons, some of whom are participants in the pending state proceedings. The other defendants herein have also been involved, at least to some extent, in the said proceedings, as well. A stay of the within cases will permit the state cases to go forward without the risk of interference and give this Court the benefit of final state adjudication of the custody of the child. *See Acord,* 551 F.Supp. at 119. A stay as to all defendants herein will also avoid the risk of duplicative litigation in the state court and in this Court. This Court will therefore retain the within cases on its docket and

**8.** Even if all the factual recitations in the plaintiff's motion, as opposed to plaintiff's general, conclusory allegations of bad faith therein, are accepted as true, there is not alleged herein such bad faith, bias, misconduct or prejudice on the part of the state court judge as to justify intervention in the state proceeding by this Court. *Cf. Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Peterson v. Sheran,* 635 F.2d 1335, 1340 (8th Cir.1980). Federal intervention is permitted in such cases only under "extraordinary circumstances." *See Kugler, supra,* 421 U.S. at 124–26, 95 S.Ct. at 1530–31. In *Kugler,* Justice Stewart analyzed the procedural protections provided by state law and concluded that the plaintiff's claim therein that he would not receive a fair hearing was without foundation. *See id.* at 127–29, 95 S.Ct. at 1532–33. The same is true herein.

stay further proceedings therein pending completion of the state cases and any appeals therefrom. However, should the state cases be unreasonably delayed, this Court will entertain a motion by plaintiff to resume the within cases prior to the termination of those proceedings. *See Acord,* 551 F.Supp. at 119.

(3) When proceedings resume in the within cases, this Court will consider whether to consolidate the within cases under Federal Civil Rule 42.

(4) Counsel for defendants are hereby requested to file a joint status report concerning the pending state cases on the first of each month, commencing January 1, 1986. Plaintiff may also file such status reports, if he so desires, from time to time.

(5) The Clerk is directed to send copies of this Memorandum and Order to plaintiff and to counsel of record in each of these two cases. It is so ORDERED, this *18th* day of *December,* 1985.