David M. WILLIAMS

v.

John C. NORTH, II, Individually and as Associate Judge for the Circuit Court for Talbot County, etc., et al.

Civ. No. K–85–3088.

United States District Court, D. Maryland.

March 30, 1988.

David M. Williams, Chestertown, Md., pro se.

J. Joseph Curran, Jr., Atty. Gen. of Md., and James G. Klair, Asst. Atty. Gen., Baltimore, Md., for defendants North, Wise, Cole, Carter, Rasin, Bodine and Foster.

Alvin I. Frederick, Lloyd J. Snow and Eccleston and Seidler, Baltimore, Md., for defendant Hairston and additional counsel for defendants Rasin and Carter.

George C. Nier, Denton, Md., for defendant Caroline County.

Robert Valliant Jones, P.A., Elkton, Md., for defendant Cecil County.

David R. Thompson and Earnest & Cowdrey, P.A., Easton, Md., for defendants Talbot County and Chesapeake Pub. Corp.

Michael T. Soberick, Co. Atty. of Gloucester County, Gloucester, Va., William J. Jackson and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Baker.

Patrick E. Thompson, Grasonville, Md., for defendant Queen Anne's County.

Joan Turner, pro se.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff David Williams, proceeding *pro se*, instituted this case on July 22, 1985 seeking injunctive and monetary relief against numerous defendants (a) for various alleged violations of constitutional rights pursuant to 42 U.S.C. § 1983, and (b) asserting pendent jurisdiction for tortious conduct under Maryland law. Five state court judges are included among those defendants. Judge John C. North, II was the presiding judge in a custody proceeding in the Circuit Court for Talbot County, *Turner v. Williams*, Equity No. 6201, which gave rise to the allegations in this suit. Judge George B. Rasin, Jr., of the Circuit Court for Kent County, handled an Emergency Petition for Custody Pendente Lite

filed by Williams in *Turner* during an absence of Judge North. Judges Clayton C. Carter, of the Circuit Court for Queen Anne's County, Donaldson C. Cole, Jr., of the Circuit Court for Cecil County, and James Owen Wise, of the Circuit Court for Caroline County, served as members of an in banc panel[1] to hear two appeals from trial court orders entered in *Turner*. Williams contends that those five judges, individually and as co-conspirators, deprived him of the custody of his daughter pursuant to a policy favoring the mother in custody cases.[2]

There are currently pending summary judgment motions filed by defendants Rasin and Carter and by plaintiff Williams, and motions to dismiss filed by defendants North, Rasin, Carter, Cole and Wise. Because all parties have filed affidavits, this Court treats those motions to dismiss as summary judgment motions pursuant to Fed.R.Civ.P. 12(b) and 56.

## FACTS

In 1978, Williams was initially awarded custody of his child in *Turner v. Williams*, Equity Case No. 6201 (Circuit Court for Talbot County).[3] Judge Harry Clark of the Circuit Court for Talbot County presided in

---

**1.** Composed of three judges of the circuit in which the trial court is located other than the judge who tried the action. *See* Md.Rule 2–551. *See also* Md.Cts. & Jud.Proc.Code Ann. § 12–301 (1984).

**2.** Named as additional defendants in this case are Joan Turner, Williams' former wife; Waller Hairston, Ms. Turner's lawyer; Philip Foster, the court-appointed attorney for Williams' daughter; Jennifer Bodine, law clerk to Judge North; Jeri Baker, a social worker; Chesapeake Publishing Corporation, a newspaper publisher; and the Maryland counties—Queen Anne's, Talbot, Cecil and Caroline—in which four of the defendant judges sit. Williams' claims against those additional defendants will be addressed by this Court at a later date and are not discussed in this opinion.

Williams has also filed two other cases in this Court, *Williams v. Anderson*, Civil No. K–85–1646, and *Williams v. Rappeport*, Civil No. K–87–292. In *Anderson*, one of the two defendants is the director of a social service agency involved in the custody proceedings; the other is the agency itself. Proceedings in that case and in this case have been stayed pursuant to

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), by order of this Court dated December 18, 1985. *See Williams v. North*, 638 F.Supp. 457, 463–64 (D.Md.1986).

In *Williams v. Rappeport, supra*, Williams brought suit against a psychiatrist and a psychologist appointed by Judge North to evaluate Williams, his former wife, and his child. This Court will file shortly a separate opinion in that case. *Williams v. Rappeport*, Civil No. K–87–292 (D.Md.1988).

Because the state custody proceeding had been pending for more than two years and the defendant judges in *Williams v. North* had raised claims of judicial immunity, this Court suggested on September 24, 1987 that the parties submit appropriate Fed.R.Civ.P. 56 documents concerning the immunity issue, and the parties have so done. In this opinion, this Court addresses that immunity issue and lifts its earlier stay order in this case insofar as the defendant judges are concerned. However, the stay order remains in effect as to the other defendants. It also remains in effect as to both defendants in *Williams v. Anderson*.

**3.** Amended Complaint ¶ 22.

*Turner* until September, 1984, when Judge North took over the case. On September 14, 1984, Judge North awarded temporary custody of the child to her mother, Ms. Turner.[4] After plaintiff, on October 25, 1984, petitioned Judge Rasin, sitting in the Circuit Court for Talbot County, to give him custody of the child, Judge Rasin, in the course of denying that petition, ordered the child committed to a psychiatric institution for evaluation.[5] Williams seemingly claims that Judge Rasin acted beyond his authority as the judge sitting in an equity court since, in Williams' view, only a court sitting pursuant to the Maryland Juvenile Act may issue such an order. The child was evaluated by the psychiatric institution and returned to the custody of Ms. Turner. On January 18, 1985, in response to a petition by Williams to regain custody filed on December 12, 1984, Judge North ordered the child placed in the temporary custody of the Kent County Department of Social and Health Services. Williams' appeal from that order to an in banc panel of the Second Judicial Circuit,[6] consisting of Judges Carter, Cole and Wise, was denied. Williams also appealed an allegedly *ex parte* order by Judge North dated February 11, 1984 in which Judge North apparently transferred the custody of the child to Ms. Turner.[7] The same three-judge panel reversed the February 11, 1984 decision and reinstated the order which placed the child in the custody of the Kent County Department of Social and Health Services. Williams states that he subsequently asked Judge North to recuse himself in *Turner* because of alleged *ex parte* communications by Judge North with other parties in the case.[8] Judge North, however, declined to recuse himself and in August, 1985 ordered the child placed in a boarding school in Pennsylvania. On February 27, 1986, Judge North ordered Williams, Ms. Turner and the child to undergo psychological evaluations. After those evaluations were submitted, Judge North followed the recom-

mendations of the psychologist and, on March 31, 1987, granted custody of the child to Ms. Turner.[9] On April 7, 1987, Williams filed an appeal to the Court of Special Appeals of Maryland. That appeal is currently pending.

The above factual overview attempts to summarize, as accurately as possible, Williams' 131–page amended complaint and the affidavits and other materials submitted by Williams and other parties. Williams, for the most part, conclusorily and repetitiously asserts that the actions by the various defendants are part of a conspiracy to deprive him of custody of his child. He contends that Judge North and the Judge's law clerk conducted numerous *ex parte* hearings and secret communications with other parties and that Judge North erroneously refused to recuse himself in the light of that conduct. Williams also claims that Judge North directed a state court clerk to backdate a docket entry, apparently in order to prevent Williams from lodging a timely appeal from Judge North's refusal to recuse himself. Williams states no specific allegations against Judges Carter, Cole or Wise beyond the claim that as members of the appeals panel they conspired to deprive Williams of certain of his lawful rights. As to Judge Rasin, Williams seems only to assert that Judge Rasin acted beyond his authority when he granted Ms. Turner's petition for custody.

## JUDICIAL IMMUNITY

The doctrine of judicial immunity, long honored at common law, was adopted in this country in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). Justice Field, rejecting the claim of an attorney against a judge of the Supreme Court of the District of Columbia who had struck the attorney's name from the roll of

---

4. Amended Complaint ¶ 44.

5. Amended Complaint ¶ 46.

6. *See* note 1, *supra*. Talbot County is part of Maryland's Second Judicial Circuit.

7. Amended Complaint ¶ 61.

8. *See* Amended Complaint ¶¶ 72, 76.

9. Amended Complaint ¶ 93.

attorneys practicing in the Supreme Court of the District of Columbia, recognized

> a general principle of the highest importance to the proper administration of justice [, namely,] that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.

*Id.* (13 Wall) at 347. Although the judge was a member of the Supreme Court of the District of Columbia, his order was issued at a time when he was presiding at a trial in the Criminal Court of that jurisdiction—a court independent of the Supreme Court. Accordingly, it was arguable that the judge acted beyond his jurisdiction. The Criminal Court case involved the highly visible trial of John H. Suratt for the murder of Abraham Lincoln. *Id.* (13 Wall) at 344. Bradley, Suratt's lawyer, allegedly insulted and threatened the trial judge. Judge Fisher, after the jury had been discharged and the Court had recessed for the day, apparently ordered Bradley's name stricken from the role of the Supreme Court of the District—not just from the roll of the Criminal Court of the District. The Supreme Court of the United States held that the Criminal Court was a court separate from the Supreme Court of the District and that the Supreme Court of the District had no power to prosecute Bradley for contempt before the Criminal Court. *Id.* (13 Wall) at 345. Nevertheless, Justice Field, writing for a unanimous court, concluded that in a damage action by Bradley, Judge Fisher was exempt from liability because

> judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse

is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case....

*Id.* (13 Wall) at 351–52.

In *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), Justice White wrote:

> A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley*, 13 Wall., at 357, where it stated: "[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever...."

*Id.* (13 Wall) at 359. In *Stump*, a judge of an Indiana circuit court had granted a mother's petition to have her developmentally disabled fifteen-year-old daughter sterilized, in an *ex parte* proceeding, without notice to the daughter and without appointing a guardian *ad litem*. Several years later, after marrying and discovering the sterilization, the daughter and her husband filed suit for damages under 42 U.S.C. § 1983 in federal district court against the mother and others, including the state court trial judge who had signed the sterilization order. The Seventh Circuit concluded that the state court judge had acted outside his jurisdiction and was not immune from damage liability. Writing for a 5–3 majority of the Supreme Court, Justice White, in reversing, wrote that it was "significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump," *id.* (13 Wall) at 358, and emphasized that

[t]he relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

*Id.* (13 Wall) at 362.[10]

Under Maryland law,

[t]he circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

Md.Cts. & Jud.Proc.Code Ann. § 1–501 (1984).

The Maryland Family Act gives jurisdiction over custody matters to equity courts.[11] In exercising that jurisdiction, an equity court may deny custody to both parents, or either of them, and place custody in a third person. *See generally Ross v. Hoffman,* 280 Md. 172, 174–79, 372 A.2d 582, 586–87 (1977); *Melton v. Connolly,* 219 Md. 184, 188–89, 148 A.2d 387, 389–90 (1958). The equity court may make a temporary award of custody to a governmental agency on an emergency petition, even prior to a hearing, if the court determines that such action is in the best interest of the child. *See Thumma v. Hartsook,* 239 Md. 38, 42, 210 A.2d 151, 152–53 (1965).

Plaintiff challenges the subject-matter jurisdiction of Judges Rasin and North to issue orders transferring his child from the custody of Ms. Turner to a state institu-tion. Williams filed with Judge Rasin an Emergency Petition for Custody Pendente Lite on October 25, 1985. Judge Rasin, acting upon that petition in the absence of Judge North, ordered the child transferred from the mother's custody to the custody of a facility for psychological evaluation. After receiving such evaluation, Judge North ordered the child transferred to the custody of a state social services agency. Plaintiff argues that both actions were taken outside the circuit court's equity jurisdiction, claiming that such actions could only be taken by a juvenile court pursuant to the Maryland Juvenile Act.

Under Maryland law, the juvenile court has "exclusive original jurisdiction over a child alleged to be delinquent, in need of supervision, in need of assistance or who has received a citation for a violation." Md.Cts. & Jud.Proc.Code Ann. § 3–804(a) (Supp.1987). The Williams child was not delinquent. It may be arguable that the child was "in need of supervision." Also, arguably, the child may have been "in need of assistance." Those latter words are defined as referring to a child who "is mentally handicapped or is not receiving ordinary and proper care and attention," and whose "parents ... are unable or unwilling to give proper care and attention to the child and his problems...." Md.Cts. & Jud.Proc.Code Ann. § 3–801(e) (1984). Whether plaintiff or his wife was able and willing to give such care and attention seems to be factually in dispute in the state litigation. But, in any event, that litigation was not a state-initiated proceeding pursuant to which the state sought to deprive the parents of custody of the child. Rather, that underlying litigation involves an equity court's resolution of a custody suit between the parents. Both Judges Rasin and

---

**10.** A defense of judicial immunity is available in a suit brought under 42 U.S.C. § 1983. *Pierson v. Ray,* 386 U.S. 547, 554–55 & n. 9, 87 S.Ct. 1213, 1218, n. 9, 18 L.Ed.2d 288 (1967). *See, e.g., Stump v. Sparkman, supra.*

**11.** § 1–201. **Jurisdiction of equity court.**
(a) *In general.*—An equity court has jurisdiction over:

. . . .

(5) custody or guardianship of a child;

. . . .

(b) *Custody, guardianship, and support of child.*—In exercising its jurisdiction over the custody, guardianship, visitation, or support of a child, an equity court may:
(1) direct who shall have the custody or guardianship of a child, pendente lite or permanently;

. . . .

Md.Fam.Law Code Ann. § 1–201 (1984).

North have asserted in their affidavits that the custody issues were handled by them within the proceedings in *Turner*. Judge North emphasized that *Turner* "is not, and never has been a juvenile action subject to the Maryland rules or laws governing juvenile actions." [12] Williams has not submitted or proffered any evidence to buttress the assertions in his complaint of lack of subject-matter jurisdiction of any defendant judge in the underlying state court case. In *Stump v. Sparkman*, despite the existence of certain Indiana statutes relating to the conditions under which sterilization of institutionalized persons could take place, the Supreme Court held that the trial judge who had issued the sterilization order was entitled, even if he had acted unwisely in violation of those statutes, to assert in a damage suit under 42 U.S.C. § 1983 the bar of judicial immunity, since the absence of all jurisdiction was not "clear." 435 U.S. at 364, 98 S.Ct. at 1108.[13] Similarly in this case, in the light of Md.Fam.Law Code Ann. § 1–201(b) (1984), which confers upon an equity court jurisdiction to transfer custody "[i]n exercising its jurisdiction over the custody, guardianship, visitation, or support of a child," the alleged absence of jurisdiction, to put it most favorably to Williams, cannot possibly be said to be "clear."

Judges Carter, Cole and Wise have submitted affidavits attesting to their positions as circuit judges, to their appointment to an appeals panel to hear two appeals in *Turner* and to the jurisdiction of the appeals panel over each of those appeals. Williams does not contest the jurisdiction of the appeals panel to hear the case, but alleges that the panel's denial of his appeal from Judge North's January 18, 1985 order was in some manner unconstitutional.[14]

Even if all the facts Williams alleges are true, he has in no way indicated that any defendant judge acted in a nonjudicial role or in the clear absence of jurisdiction. Accordingly, each of the defendant judges is entitled to assert, as a matter of law, the bar of absolute immunity. Summary judgment therefore will be granted in favor of those defendants as to Williams' quest for an award of damages. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979).

### INJUNCTIVE RELIEF

While Williams' request for an injunction is not barred by the judicial immunity defense, *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984), he has failed, as to each of the defendant judges, "to establish the basic requisites of the issuance of equitable relief in these circumstances—the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Williams has not proffered, nor demonstrated in any manner, that he faces imminent harm from the actions of any defendant. Williams' conclusory references in his complaint to a policy of discrimination towards males and in favor of females by defendant judges in custody cases do not specify any future harm to Williams or to his child to which an injunction might be addressed. Furthermore, Williams has himself affirmatively moved at the state trial and appellate court levels for relief in the custody dispute and has had full opportunity in those courts to raise the constitutional claims he presents to this Court.

Finally, Williams' request for injunctive relief would place this Court in the position of interfering with the conduct of the state court custody proceeding. In the context of state criminal trials, the Su-

**12.** Affidavit of Judge North ¶ 5.

**13.** *See also Dykes v. Hosemann*, 743 F.2d 1488, 1497 (11th Cir.1984), *cert. denied,* —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986) ("[I]mmunity for judicial acts in the clear absence of jurisdiction is lost only if the judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction.... Issues of jurisdiction are often complex, and judges should be free to decide them without concern that their errors may subject them to liability.").

**14.** Amended Complaint ¶¶ 66–69.

preme Court has cautioned that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized." *O'Shea,* 414 U.S. at 502, 94 S.Ct. at 679. *Accord, Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). That principle is as appropriate in the area of family law—a particular concern of the states—as in the area of criminal law. Accordingly, Williams' request for injunctive relief directed to each of the five defendant judges will be denied.

## ORDER

(1) The stay embodied in this Court's December 18, 1985 Order is hereby lifted as to plaintiff's claims against defendants North, Rasin, Carter, Cole and Wise.

(2) Summary judgments are hereby entered in favor of defendants North, Rasin, Carter, Cole and Wise.

(3) The stay embodied in this Court's December 18, 1985 Order is otherwise hereby confirmed and continued.

(4) It is so ORDERED, this 30th day of March, 1988.